**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**(Civil Division)**

| | |
|---|---|
| CARLOS ALEXANDER <br> 2300 Q Street, S.E. <br> Washington, DC 20020 <br><br>          Plaintiff, <br><br>    v. <br><br> WASHINGTON METROPOLITAN <br> AREA TRANSIT AUTHORITY <br> 600 Fifth Street, N.W. <br> Washington, DC 20001 <br><br>          Defendant. | \* <br> \* <br> \* <br> \* <br> \* <br> \* <br> \*     Civil Action No._____ <br> \* <br> \*     **Jury Demanded** <br> \* <br> \* <br> \* <br> \* <br> \* |

## COMPLAINT

**COMES NOW** Plaintiff Carlos Alexander, by and through his undersigned counsel, and sues Defendant Washington Metropolitan Area Transit Authority ("WMATA" or "Defendant") and for cause of action states as follows:

### NATURE OF THE CASE

1.      Plaintiff Carlos Alexander ("Plaintiff" or "Mr. Alexander") brings this civil action for relief from Defendant's discriminatory conduct based on Plaintiff's disability in violation of Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12111, *et seq.* ("ADA") and the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Rehabilitation Act").

### JURISDICTION AND VENUE

2.      This Court has jurisdiction over this complaint pursuant to 28 U.S.C. § 1331, as it asserts a claim that arises under laws of the United States, specifically the ADA. 28 U.S.C. § 1331; *see also* 28 U.S.C. § 1343.

3.     Venue is appropriate and based on the fact that a substantial part of the actions complained of are the result of actions and the employment practices of Defendant, an Agency of the federal government that operates within the District of Columbia, and occurred in the District of Columbia. 28 U.S.C. § 1391. Venue is further proper in this district because there is no other district in which this action may otherwise be brought. *Id.*

## EXHAUSTION OF REMEDIES

4.     Plaintiff timely contacted the United States Equal Employment Opportunity Commission ("EEOC") and filed a complaint against WMATA alleging violations of the ADA, identified as EEOC Charge No. 570-2010-01555.

5.     Plaintiff has exhausted all of his administrative remedies.

6.     On or about July 13, 2010, Plaintiff submitted an EEOC Intake Questionnaire and, on or about September 13, 2010, subsequently submitted a Form 5 Charge to the EEOC alleging that WMATA had violated the ADA by not rehiring him because of his addiction to alcohol.

7.     On March 28, 2012, the EEOC issued a Letter of Determination finding that there was reasonable cause to believe that WMATA's decision not to rehire Plaintiff violated the ADA and invited the parties to conciliate the matter.

8.     The EEOC mailed Plaintiff a "Notice of Right to Sue," dated September 7, 2012, which provided him with 90-days from receipt of that notice to file his federal lawsuit.

9.     Plaintiff hereby timely files this action within 90 days after receipt of the EEOC's notice of the right to sue.

## PARTIES

10.     Plaintiff is currently domiciled at 2300 Q Street, S.E., Washington, DC 20020.  Plaintiff is a resident of the District of Columbia and a United States citizen.

11.     Defendant WMATA is an instrumentality created by Congress to operate a mass transit system in the District of Columbia and the surrounding Metropolitan area and is subject to suit for the negligent, discriminatory, wanton, willful or wrongful acts and/or omissions of its employees or agents and is therefore are liable pursuant to the doctrine of *Respondeat Superior.*

## FACTS

12.     Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

13.     In January 2009, Plaintiff was terminated from WMATA for not successfully completing the Employee Assistance Program ("EAP") for Drug/Alcohol Abuse.

14.     During Plaintiff's exit interview, he was informed by Herbert Bullock (Communications Superintendent), William Wise (EAP Counselor) and Willie Jones (Area Manager) that he would be qualified to be rehired after a year and after successfully completing an Intensive Alcohol Abuse Treatment Program.

15.     Recognizing that he suffers from an addiction to alcohol, Plaintiff entered into the Washington Hospital Center Outpatient Behavioral Health Service and successfully completed their rigorous Chemical Dependency Intensive Outpatient Program in January 2010.  Plaintiff received a Certificate of Completion from this program.

16.     In April or May 2010, Plaintiff applied for the position of Communications Helper Mechanic. Shortly after submitting his application, Plaintiff was invited to take the Entrance Exams.

17.     Plaintiff passed the Written and Practical Exams and was subsequently interviewed by Willie Jones and Wayne Salky.

18.     After completing the interview, Plaintiff was advised to go to the Human Resources Department, where he received a Contingent Letter of Offer from Rita Watkins (Human Resources Representative).

19.     The letter stated that his employment was contingent on passing a criminal background check, medical evaluation, drug screening, employment references check and verification of his education.

20.     Plaintiff provided Ms. Watkins his Certificate of Completion from Washington Hospital Center Outpatient Behavioral Health Service for successfully completing their Chemical Dependency Intensive Outpatient Program. Ms. Watkins made a copy of that document.

21.     Plaintiff received confirmation that he successfully passed the medical evaluation.

22.     Upon information and belief, Plaintiff also satisfied the criminal background check, drug screening, employment references check and the verification of his education.

23.     However, in June 2010, Plaintiff received a letter from Ms. Watkins that the results from his physical disqualified him from the position.

24.    After requesting the specific reason for his disqualification, Plaintiff was informed by Mr. Santos that pursuant to a WMATA policy he was not eligible to be rehired because of his previous unsuccessful completion of the Employee Assistance Program.

25.    Plaintiff confirmed with the Agency's Union that WMATA does not have such a policy as stated by Mr. Santos.

26.    Plaintiff then requested a meeting with Lisa Cooper-Lucas (Medical Office Manager).

27.    During that meeting, Plaintiff was informed of a third and different reason for his non-selection.  Ms. Cooper-Lucas stated that he was not hired because of a belief that he did not complete the Chemical Dependency Intensive Outpatient Program as he stated on his Medical Questionnaire.

28.    After Plaintiff explained to that he did in fact successfully complete the program and again presented the Certificate of Completion, Ms. Cooper-Lucas told him that he was not hired because of his previous unsuccessful completion of the Employee Assistance Program and he would have to wait two years before being able to be rehired.

29.    When he challenged her statement, Ms. Cooper-Lucas became agitated and told him that he would now have to wait three years before being able to be rehired. After further challenging her, Ms. Cooper-Lucas told him that he would not ever be eligible to be rehired.

30.    Plaintiff submitted a second and third request for clarification of his disqualification.  To date, Plaintiff has not received an official response to any of his requests.

31.     In August 2011, Plaintiff applied again for the Communications Helper Mechanic position and was again invited to take the Entrance Exams, which he passed.

32.     A few days later, Ms. Watkins called Plaintiff and informed him that Ms. Cooper-Lucas disqualified him again.

33.     Plaintiff contacted Gary Baldwin (Director of the EAP) and informed Mr. Baldwin of his experience.

34.     After hearing Plaintiff's story, Mr. Baldwin stated that he would begin an investigation.   Upon information and belief, the investigation was concluded in September/October of 2011.

35.     Plaintiff was again informed that WMATA does not have a written policy pertaining to non-compliance with the Employee Assistance Program but that WMATA representatives were not willing to rehire him because they feared that rehiring him would open the gates for others.

36.     Plaintiff was also informed that he would be eligible for non-safety positions.

37.     In October 2011, Plaintiff applied for an Automatic Fare Collections Helper Mechanic position.  Upon information and belief, this position is classified as a non-safety position.

38.     Again, he was invited to take the Entrance Exams but was only able to take the Written Exam, which he passed.

39.     Before Plaintiff was able to take the Practical Exam, Ms. Watkins informed him that she remembered his situation and would need to confirm what position

he had applied. She further informed him that she would contact him and give him the information needed to proceed in the hiring process.

40.    Despite numerous phone calls to Ms. Watkins to obtain the status of his application, Plaintiff has not received a response to date.

## CAUSES OF ACTION

### COUNT ONE
**Americans with Disabilities Act of 1990, as amended,**
**42 U.S.C. § 12111 *et seq.***
**(Disability Discrimination)**

41.    Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

42.    Plaintiff suffers from alcoholism and is a recovering alcohol addict.

43.    Plaintiff is a qualified individual with a disability.

44.    Plaintiff's medical condition substantially limits major life activities; namely, his ability to care for himself, ability to concentrate, ability to think, ability to work and sleep.

45.    Plaintiff's condition is permanent.

46.    At the time of his non-selection, Plaintiff had the necessary knowledge, skills and experience to successfully perform the duties and responsibilities of a Communications Helper Mechanic and an Automatic Fare Collections Helper Mechanic.

47.    Plaintiff's termination is a materially adverse action. Any reason proffered for Plaintiff's termination would not be legitimate, and it would be pretext.

48.    Prior to being non-selected, Defendant was aware that Plaintiff suffered from alcoholism.

49.    Plaintiff has been treated differently and subjected to different terms and

conditions of employment due to his disability.

50.    Defendant intentionally discriminated against Plaintiff because of his disability.

51.    Defendant has limited, segregated and classified Plaintiff in a way which deprives him of employment opportunities because of his disability.

52.    Other employees who were similarly situated, but members of a different protected class than Plaintiff, have received different terms and conditions of employment.

53.    Plaintiff believes that he was not selected based upon his disability.

54.    Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

55.    Due to Defendant's actions, Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering and such impact is on-going and permanent in nature.

56.    Plaintiff has incurred lost wages and loss of career opportunity now and into the future, all without any negligence being attributed to Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays that this Honorable Court:

    a.   Award compensatory damages in excess Five Hundred Thousand Dollars ($500,000.00);

    b.   Award lost wages;

    c.   Award back pay and benefits, with interest;

    d.   Award future wages;

e.  Award reasonable attorney fees, costs, and expenses incurred for this action;

f.  Award equitable, declaratory, and injunctive relief; and

g.  Award such other and further relief as this Honorable Court deems just and proper.

## COUNT TWO
### Rehabilitation Act of 1973, as amended,
### 29 U.S.C. § 794, *et seq.*
### (Disability Discrimination)

57.  Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

58.  At all relevant times, WMATA was a recipient of federal funding within the meaning of the Rehabilitation Act.

59.  Plaintiff suffers from alcoholism and is a recovering alcohol addict.

60.  Plaintiff is a qualified individual with a disability.

61.  Plaintiff's medical condition substantially limits major life activities; namely, his ability to care for himself, ability to concentrate, ability to think, ability to work and sleep.

62.  Plaintiff's condition is permanent.

63.  At the time of his non-selection, Plaintiff had the necessary knowledge, skills and experience to successfully perform the duties and responsibilities of a Communications Helper Mechanic and an Automatic Fare Collections Helper Mechanic.

64.  Plaintiff's termination is a materially adverse action.  Any reason proffered for Plaintiff's termination would not be legitimate, and it would be pretext.

65.  Prior to being non-selected, Defendant was aware that Plaintiff suffered

9

from alcoholism.

66.     Plaintiff has been treated differently and subjected to different terms and conditions of employment due to his disability.

67.     Defendant intentionally discriminated against Plaintiff because of his disability.

68.     Defendant has limited, segregated and classified Plaintiff in a way which deprives him of employment opportunities because of his disability.

69.     Other employees who were similarly situated, but members of a different protected class than Plaintiff, have received different terms and conditions of employment.

70.     Plaintiff believes that he was not selected based upon his disability.

71.     Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

72.     Due to Defendant's actions, Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering and such impact is on-going and permanent in nature.

73.     Plaintiff has incurred lost wages and loss of career opportunity now and into the future, all without any negligence being attributed to Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

    a.  Award compensatory damages in excess Five Hundred Thousand Dollars ($500,000.00);

    b.  Award lost wages;

c.  Award back pay and benefits, with interest;

d.  Award future wages;

e.  Award reasonable attorney fees, costs, and expenses incurred for this action;

f.  Award equitable, declaratory, and injunctive relief; and

g.  Award such other and further relief as this Honorable Court deems just and proper.

## COUNT III
### Equitable Relief

74.  Plaintiff hereby incorporates, by reference hereto, the facts, law, and/or allegations contained within the preceding paragraphs, as fully set forth herein.

75.  Because of the actions alleged herein, the continued employment of the supervisors at issue herein without training in equal employment opportunity law, rules and regulations, present clear and present dangers to the employees of Defendant and could result in further illegal actions on the party of Defendant, by and through its agents, servants and employees.

**WHEREFORE,** Plaintiff respectfully prays that this Honorable Court:

a.  Order the Defendant institute a policy and procedure to be implemented against discrimination;

b.  Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

c.  Supervisory training for the supervisors at issue herein; and

d.  Such other and further relief as this Court deems just and proper.

11

## JURY DEMAND

76.     Pursuant to Fed. R. Civ. P. 38, Plaintiff demands trial by jury on all issues

so triable.

Respectfully submitted,

By:     _____
DONNA WILLIAMS RUCKER
   (D.C. Bar 446713)
RUCKER & ASSOCIATES, P.C.
888 Sixteenth Street, N.W., Suite 800
Washington, DC 20006
Office: (202) 349-9830
Facsimile: (202) 355-1399
Email: drucker@ruckerlawpc.com

December 5, 2012                          Counsel for Plaintiff