## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CARLOS ALEXANDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-cv-1959 (TSC) |
| | ) | |
| WMATA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Carlos Alexander brings this discrimination action pursuant to the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.*,[1] against defendant Washington Metropolitan Area Transit Authority ("WMATA"), challenging WMATA's decision to deny his applications for rehire after he completed an alcohol abuse treatment program. Before the Court is WMATA's motion for summary judgment. Upon consideration of the motion, the response and reply thereto, the entire record, and for the following reasons, the Court grants WMATA's motion.

## I.     BACKGROUND

Alexander is a former WMATA employee who alleges that he has suffered from alcohol dependency since approximately 1980. (Pl. Opp'n 5). From November 1999 until his termination in January 2009, Alexander worked for WMATA as an Automatic Train Control Mechanic Helper and a Communications Mechanic Helper. (Alexander Aff. ¶¶ 3-4). In April 2007, Alexander's supervisor smelled alcohol on Alexander's breath when he arrived at work.

---

[1] Alexander originally brought claims under the Rehabilitation Act and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, but voluntarily dismissed the ADA claim (Count I). (Pl. Opp'n 19).

Alexander took a breathalyzer test and tested positive for alcohol, after which he was suspended and referred to WMATA's Employee Assistance Program.  Alexander returned to work in December 2007 and was required to take periodic alcohol tests as a condition of his reinstatement.  In January 2009, Alexander again tested positive for alcohol at work.  WMATA terminated Alexander on January 27, 2009.  (Pl. Opp'n 5-6).

WMATA informed Alexander that he could apply to be rehired in one year if he completed an intensive alcohol abuse treatment program.  In the fall of 2009, Alexander entered a treatment program at the Washington Hospital Center, and completed the program in January 2010.  (Pl. Statement of Mat. Facts in Dispute ¶ 7).

After completing the alcohol treatment program, Alexander reapplied for several positions at WMATA.  In April or May 2010, he applied for a Communications Helper mechanic position, but was informed in June 2010 that he was not qualified for the position.[2]  (Def. Statement of Undisputed Facts ¶ 2; Pl. Statement in Response 15).  Alexander applied for a Communications Helper mechanic position in August 2011, but was informed a few days later that he was disqualified from the position.  (Def. Statement of Undisputed Facts ¶ 3; Pl. Statement in Response 17).  Finally, in October 2011 he applied for an Automatic Helper mechanic position, but was not rehired.  (Def. Statement of Undisputed Facts ¶ 4; Pl. Statement in Response 17).

On or about July 13, 2010 (after the first rehire decision but before the second and third), Alexander filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging that WMATA had violated the ADA by not rehiring him because of his alcohol

---

[2] Alexander does not dispute that he learned of WMATA's decision not to rehire him in June 2010; however, he disputes that he was told about any specific circumstances that disqualified him from the position.  (Pl. Statement in Response to Def. Statement of Undisputed Facts 16).

dependency.  On September 7, 2012, Alexander received a right to sue letter from the EEOC.

(Compl. ¶¶ 6, 8).  He filed this lawsuit on December 5, 2012.

## II.    LEGAL STANDARD

### a.  Summary Judgment

Summary judgment may be granted if "the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986); *Holcomb v.*

*Powell,* 433 F.3d 889, 895 (D.C. Cir. 2006).  "A party asserting that a fact cannot be or is

genuinely disputed must support the assertion by citing to particular parts of materials in the

record."  Fed. R. Civ. P. 56(c)(1)(A).  "A fact is 'material' if a dispute over it might affect the

outcome of a suit under the governing law; factual disputes that are 'irrelevant or unnecessary'

do not affect the summary judgment determination."  *Holcomb,* 433 F.3d at 895 (quoting *Liberty*

*Lobby, Inc.,* 477 U.S. at 248).  An issue is "genuine" if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party.  *See id.*  The party seeking summary

judgment "bears the heavy burden of establishing that the merits of his case are so clear that

expedited action is justified."  *Taxpayers Watchdog, Inc., v. Stanley,* 819 F.2d 294, 297 (D.C.

Cir. 1987).

In considering a motion for summary judgment, "the evidence of the nonmovant[s] is to

be believed, and all justifiable inferences are to be drawn in [their] favor."  *Liberty Lobby, Inc.,*

477 U.S. at 255; *see also Mastro v. Potomac Elec. Power Co.,* 447 F.3d 843, 850 (D.C. Cir.

2006).  The nonmoving party's opposition, however, must consist of more than mere

unsupported allegations or denials, and must be supported by affidavits, declarations, or other

competent evidence, setting forth specific facts showing that there is a genuine issue for trial.

Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). The nonmovant is

required to provide evidence that would permit a reasonable jury to find in her favor.

*Laningham v. United States Navy,* 813 F.2d 1236, 1242 (D.C. Cir. 1987).

> b. The Rehabilitation Act

Claims under the Rehabilitation Act are governed by the burden-shifting framework laid

out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *See McGill v. Muñoz,* 203 F.3d

843, 845 (D.C. Cir. 2000). Under this framework, the plaintiff must first establish, by a

preponderance of the evidence, a *prima facie* case of discrimination. *McDonnell Douglas,* 411

U.S. at 802. Once the plaintiff establishes a *prima facie* case, the defendant must "produc[e]

evidence that the adverse employment actions were taken for a legitimate, non-discriminatory

reason." *Aka v. Washington Hosp. Ctr.,* 156 F.3d 1284, 1289 (D.C. Cir. 1998) (citation omitted).

Once the defendant has done so, "the presumption . . . raised by the prima facie case is rebutted"

and "drops from the case." *Id.* (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507

(1993)). To survive summary judgment, the plaintiff must then show that a reasonable jury

could infer that the proffered legitimate reason was false and that defendant's actions were

intended as discrimination from a "combination of (1) the plaintiff's *prima facie* case; (2) any

evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and

(3) any further evidence of discrimination that may be available to the plaintiff." *Id.* at 1289.

## III.   ANALYSIS

WMATA argues that Alexander's claim must be dismissed as a matter of law because it

is barred by the statute of limitations, or alternatively, that even if the claim is timely, Alexander

does not have a qualifying disability under the Rehabilitation Act.

a.   Statute of Limitations

Congress did not establish a statute of limitations for claims brought under the

Rehabilitation Act.  *See Long v. Howard Univ.*, 512 F. Supp. 2d 1, 11 (D.D.C. 2007)

("The Rehabilitation Act and ADA, like many federal civil rights statutes, do not contain

a statute of limitations."); *see generally* 29 U.S.C. § 791 *et seq.*  When Congress fails to enact a

statute of limitations for a federal cause of action, "federal courts may 'borrow' one from an

analogous state cause of action, provided that the state limitations period is not inconsistent with

underlying federal policies."  *Spiegler v. District of Columbia*, 866 F.2d 461, 463-64 (D.C. Cir.

1989); *see also Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985); *Johnson v. Ry. Express Agency,

Inc.*, 421 U.S. 454, 462 (1975).  In such cases, courts also apply state tolling provisions because

"in virtually all statutes of limitations the chronological length of the limitation period is

interrelated with provisions regarding tolling, revival, and questions of application."  *Johnson*,

421 U.S. at 464.

The parties disagree on which statute of limitations governs Rehabilitation Act claims

brought in the District of Columbia.  WMATA argues that the District of Columbia Court of

Appeals decision in *Jaiyeola v. District of Columbia*, 40 A.3d 356 (D.C. 2012), which held that

the one-year statute of limitations under the District of Columbia Human Rights Act

("DCHRA") governs claims under section 504 of the Rehabilitation Act, is controlling.  Under

that reasoning, Alexander's claims would be barred because the June 2010, August 2011, and

October 2011 denials all occurred more than one year before the filing of the Complaint on

December 5, 2012.  (Def. Mot. 4-6).  WMATA also contends that tolling does not apply because

Alexander was not required to file a complaint with EEOC before filing suit.  (*Id.*).  Alexander

claims that the District of Columbia's general three-year limitations period for personal injury

claims controls, citing *Tyler v. WMATA*, No. 14-cv-601, 2014 WL 2979031, at *1 (D.D.C. July 3, 2014).  (Pl. Opp'n 20-21).  The parties agree that if the three-year period applies, Alexander's claims are timely.  If the one-year period applies, Alexander's claims would only be timely if the limitations period was tolled during the pendency of Alexander's administrative complaint.

 *Tyler* also involved a dispute regarding the applicable statute of limitations period in the District of Columbia for Rehabilitation Act claims.  *Tyler*, 2014 WL 2979031, at *3.  In that case, WMATA relied on *Jaiyeola* to argue that the plaintiff's claim should be dismissed because he filed his complaint almost two years after he learned that he would not be hired.  The plaintiff argued that even if the one-year period applied, his claim was tolled by the EEOC's investigation of his complaint.  The Court agreed with the plaintiff, holding that under the DCHRA claims are tolled while a complainant pursues administrative remedies.  *Id.* at *4.  Moreover, the Court held that the decision in *Adams v. District of Columbia*, 740 F. Supp. 2d 173 (D.D.C. 2010), which declined to toll the statute of limitations during an EEOC investigation, was distinguishable because the *Adams* court applied the District's general three-year limitations period, not the DCHRA's one-year period.  *Id.*

 WMATA argues that the Supreme Court's decision in *Johnson v. Railway Express Agency, Inc.* forecloses any reliance on *Tyler*.  In *Johnson*, the Supreme Court held that the filing of an EEOC charge did not toll the statute of limitations for a section 1981 claim.  However, the Court applied Tennessee's one-year statute of limitations, which did not provide for tolling of the statute of limitations.  *See Johnson*, 421 U.S. at 463 ("[N]o tolling circumstances described in the State's statutes was present to toll the period for [plaintiff's] § 1981 claim.").  The Court's refusal to toll the statute of limitations for the plaintiff's federal claim was based on "the State's wisdom in setting a limit, and exceptions thereto, on the prosecution of a closely analogous

claim." *Id.* at 464.  In this case, however, the state statute WMATA contends is controlling—the

DCHRA— does contain a tolling provision.  *See* D.C. Code § 2-1403.16(a) ("The timely filing

of a complaint with the Office [of Human Rights], or under the administrative procedures

established by the Mayor . . . shall toll the running of the statute of limitations while the

complaint is pending.").  If the one-year statute of limitations under the DCHRA applies, so does

the Act's tolling provisions, as a limitations period is "understood fully only in the context of the

various circumstances that suspend it from running . . . ."  *Johnson*, 411 U.S. at 464.

 WMATA argues that even if the DCHRA includes a tolling provision, it should not apply

here because Alexander was not required to bring an administrative complaint.  The issue of

whether administrative exhaustion is a prerequisite to filing suit in federal court for section 504

claims is an unsettled question in this Circuit, and opinions in this Court have come down on

both sides.  *Compare Ellis v. Georgetown Univ. Hosp.*, 631 F. Supp. 2d 71, 75 (D.D.C. 2009)

(holding that, like Title VII claims, administrative exhaustion is required to bring Rehabilitation

Act claims), *and Turner v. District of Columbia*, 383 F. Supp. 2d 157, 176 (D.D.C. 2005) (the

Rehabilitation Act incorporates Title VII's "powers, remedies, and procedures" because the Act

incorporates the "standards" of the ADA (which incorporates Title VII)), *with Minter v. District

of Columbia*, No. 10–0516, 2014 WL 3854948, at *10 (D.D.C. Aug. 5, 2014) (ADA's

incorporation of Title VII administrative exhaustion requirements does not apply to section 504

of the Rehabilitation Act), *and Adams v. District of Columbia*, 740 F. Supp. 2d 173, 181 (D.D.C.

2010) (exhaustion of administrative remedies is not required to bring claims under Rehabilitation

Act).  However, the Court need not decide whether administrative exhaustion is a prerequisite to

filing suit in federal court because, under the DCHRA, "private causes of action [are] tolled

during the time in which a complainant pursues administrative remedies, regardless of whether

the complainant is required to [do so] . . . ." *Tyler*, 2014 WL 2979031, at *4 (citing D.C. Code §
2-1403.16).[3]

Therefore, because tolling applies if the correct statute of limitations is one year and the

claims are indisputably timely if the correct period is three years, the Court need not decide

which statute of limitations period controls because Alexander's claim would be timely under

either limitations period. *See Tyler*, 2014 WL 2979031, at *4 (declining to decide which period

governs because, even if one-year period governed, plaintiff's claim was tolled by the EEOC's

investigation).

> b. <u>Disability Discrimination under the Rehabilitation Act</u>

"In order to establish a *prima facie* case of discrimination under the [Rehabilitation] Act,

a plaintiff must show that: (1) the plaintiff is an individual with a disability within the meaning

of the Act, (2) the plaintiff can otherwise perform the essential functions of his job with

reasonable accommodation, and (3) the employer refused to make such an accommodation or

discharged the plaintiff because of his handicap." *Chinchillo v. Powell*, 236 F. Supp. 2d 18, 23

(D.D.C. 2003).   Under the Act,[4] "an individual with a disability" is someone who has "a

physical or mental impairment that substantially limits one or more major life activities of such

individual." 42 U.S.C. § 12102(1)(A).[5] "[M]ajor life activities include, but are not limited to,

caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing,

---

[3] As discussed above, Alexander filed his EEOC complaint after the first denial to rehire but before the second and third.  This raises the separate question of "whether claims of discrimination or retaliation that are based on events alleged to have occurred after the filing of an administrative complaint" fall within the scope of that complaint. *Mount v. Johnson*, 36 F. Supp. 3d 74, 84 (D.D.C. 2014).  WMATA does not argue that Alexander should have filed individual complaints with the EEOC for the three rehire denials.  The Court will therefore assume that all the rehire denials are properly before the Court as long as they are timely (which the Court finds they are).

[4] The standards set out in the ADA are applied to Rehabilitation Act claims.  29 C.F.R. § 1614.203(b).

[5] The ADA also defines disability as a record of an impairment or being regarded as having an impairment.  42 U.S.C. § 12102(1)(B)-(C).  Alexander does not allege either as the basis for his claim.

lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A).  EEOC regulations implementing the ADA provide factors that courts may look to in assessing whether a major life activity is substantially limited, including "the difficulty, effort, or time required to perform a major life activity; pain experienced when performing a major life activity; the length of time a major life activity can be performed; and/or the way an impairment affects the operation of a major bodily function."  29 C.F.R. § 1630.2(j)(4)(ii).

In order to show that he is an "individual with a disability within the meaning of the Act," Alexander must point to some evidence in the record that demonstrates that his alcohol dependency substantially limits at least one of his major life activities, because "whether a person has a disability under the [Act] is an individualized inquiry."  *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483 (1999) (citation omitted) (overturned by statute on other grounds). Although some courts have treated alcoholism as a disability without examining whether it substantially limits a major life activity, the more recent trend is to engage in the individualized inquiry described in *Sutton*.  *See Williams v. Savage*, 538 F. Supp. 2d 34, 40 (D.D.C. 2008) ("Alcoholism is not a *per se* disability, and the court must undertake a case-by-case analysis to determine whether a plaintiff qualifies as having a disability."); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 670 (7th Cir. 2011) (alcoholism was not a disability where there was "no evidence in the record that it substantially limited [plaintiff's] major life activities"); *Burch v. Coca-Cola Co.*, 119 F.3d 305, 315-16 (5th Cir. 1997) (declining to define alcoholism as a *per se* disability under the ADA); *Rocco v. Gordon Food Serv.*, 998 F. Supp. 2d 422, 426 (W.D. Pa. 2014) ("[O]n a motion for summary judgment, the court must determine whether plaintiff adduced sufficient evidence from which a jury reasonably could infer that plaintiff was

substantially limited in his ability to perform a major life activity."); *Wilson v. Int'l Bhd. of Teamsters, Chauffeurs and Warehousemen*, 47 F. Supp. 2d 8, 10 (D.D.C. 1999) (applying case-by-case approach); *see generally Desmond v. Mukasey*, 530 F.3d 944 (D.C. Cir. 2008) (applying three-prong test to define disability); 29 C.F.R. § 1630.2(j)(1)(iv) ("The determination of whether an impairment substantially limits a major life activity requires an individualized assessment.").

Alexander fails to make the required showing because he does not identify any evidence that at least one of his major life activities are substantially limited by his alcohol dependency.[6] Alexander meets the first two parts of the disability definition by providing evidence that he has an impairment (alcohol dependency) that affects major life activities (*e.g.*, ability to care for himself, walking, concentrating, etc.).  However, Alexander's claim ultimately fails because he does not identify a single piece of evidence regarding *how* his alcoholism is substantially limiting.  While Alexander claims that his alcoholism substantially limits "his ability to care for himself, ability to concentrate" (Compl. ¶¶ 44, 61; Pl. Opp'n 8, 19, 27, Ex. 5), "ability to sleep" (Compl. ¶¶ 44, 61; Pl. Opp'n 27, Ex. 6), "ability to walk" (Pl. Opp'n 8, 19, 27, Ex. 5), "communicate" (Pl. Opp'n 8, 19, 27, Ex. 5), and "work" (Compl. ¶¶ 44, 61), these statements merely identify major life activities, and provide no detail as to how those major life activities are substantially limited by his alcohol dependency.  Even Alexander's own expert, Roberta S. Malone, did not provide details as to how Alexander's alcoholism affects his major life activities.  Dr. Malone offered only the conclusory statement that Alexander's "condition (alcohol dependence) dramatically effects [sic] major life activities," without a single example of the

---

[6] Alexander appears to misunderstand what it means to have a disability under the Rehabilitation Act by conflating "impairment" with "disability."  As previously discussed, a disability under the Act requires three things: (1) a mental or physical impairment that (2) substantially limits a (3) major life activity.

alleged dramatic effects.  (Pl. Opp'n Ex. 5).  At oral argument, counsel for Alexander claimed

that the "effects" referenced by Dr. Malone were explained in more detail in Alexander's own

interrogatory response.  In that interrogatory, WMATA asked Alexander to "state what major

life activity or activities is affected by [the] disability and the manner in which the life activity is

affected."  (Pl. Opp'n Ex. 6 at 6).  Alexander responded only that "[t]he ones that I can think of

at this time are sleeping, daily care activities and depression."  (*Id.*).  The record is simply devoid

of any reference to substantial limitation.

      Alexander's assertion that his alcoholism affects major life activities, without any

reference to the substantial limitations of those activities, is not sufficient to produce a genuine

dispute of material fact for trial as to Alexander's purported disability.  *See*, *e.g.*, *Haynes v.*

*Williams*, 392 F.3d 478, 484-85 (D.C. Cir. 2004) ("[i]t is insufficient for individuals attempting

to prove disability . . . to merely submit evidence of a medical diagnosis of an impairment.

Instead, the ADA requires those 'claiming the Act's protection . . . to prove a disability by

offering evidence that the extent of the limitation [on a major life activity caused by that

impairment] . . . is substantial.") (internal quotation marks and citation omitted); *Alexander v.*

*Tomlinson*, 507 F. Supp. 2d 2, 21-22 (D.D.C. 2007) (plaintiff's references to major life activities

"is plainly insufficient. Plaintiff refers to difficulties 'eating, sleeping, and concentrating,' but he

provides no detail whatsoever regarding the nature or extent of these difficulties.") (collecting

cases); *Adair v. Solis*, 742 F. Supp. 2d 40, 58 (D.D.C. 2010), *aff'd*, 473 F. App'x 1 (D.C. Cir.

2012) ("While plaintiff now avers that during 2001–2002 he 'was having difficulty seeing and

reading' as well as 'difficulty caring for his person and [working],' plaintiff's self-serving

statements are 'simply too vague and conclusory' for a reasonable jury to conclude that he was

substantially limited in a major life activity.") (citations omitted); *Brown v. Snow*, 407 F. Supp.

2d 61, 68 (D.D.C. 2005) (holding that summary judgment for the defendant was appropriate where the plaintiff claimed that "his 'physical disability' limits 'one or more of his major life activities'" but "fail[ed] to articulate with any particularity" how the limitation was substantial); *Chisholm v. District of Columbia*, 666 F. Supp. 2d 96, 110 (D.D.C. 2009) (granting summary judgment to defendant because "the plaintiff offer[ed] no evidence stating that her alleged ankle injury limited her ability in any degree to work or to perform any other major life activity"); *Kalekiristos v. CTF Hotel Mgmt. Corp.*, 958 F. Supp. 641, 657 (D.D.C. 1997), *aff'd*, 132 F.3d 1481 (D.C. Cir. 1997) ("The record in the instant action is devoid of any evidence that the plaintiff was unable to perform functions such as caring for himself . . . [or] walking . . . during the period of the alleged disability discrimination."). Alexander has therefore not met his burden of establishing the first element for a *prima facie* case of disability discrimination under the Rehabilitation Act.

## IV.     CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment is GRANTED. The Court need not address the other basis for summary judgment presented by WMATA in its motion. An appropriate Order accompanies this Memorandum Opinion.

Date:  March 10, 2015

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge